# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

JUAN A. STEWART,

                Petitioner,          :     Case No. 2:22-cv-1151

    - vs -                         District Judge Michael H. Watson
                               Magistrate Judge Michael R. Merz

WARDEN, Belmont Correctional
  Institution,

                               :

             Respondent.

## REPORT AND RECOMMENDATIONS

Petitioner Juan Stewart brought this action under 28 U.S.C. § 2254 to obtain relief from his convictions on two counts of murder and one count of having weapons while under disability.  The case is ripe for decision on the Petition (ECF No. 1), the State Court Record (ECF No. 5), the Return of Writ (ECF No. 6), and Petitioner's Traverse (ECF No. 11).

**Litigation History**

On January 20, 2015, Edward L. Williams was shot to death while sitting in a car in what witnesses described as a high crime and drug neighborhood.  Eighteen months later, on September 1, 2016, a Franklin County Grand Jury indicted Stewart for Williams' death on one count of purposeful murder in violation of Ohio Revised Code § 2903.02(A), one count of felony murder in violation of Ohio Revised Code § 2903.02(B), and one count of having a weapon while under disability in violation

of Ohio Revised Code § 2903.11. Both murder counts carried repeat violent offender specifications, and all three counts carried firearm specifications. Stewart waived his jury trial right as to the weapons under disability charge and the various specifications.  At the first trial in May 2018, the trial court found him guilty on the weapons charge and associated firearm specification, but the jury was unable to reach a verdict on the murder counts.

On re-trial in August 2019, a jury convicted Stewart on both murder counts and the related firearm specifications; the trial judge found him guilty on the repeat violent offender specifications. He was then sentenced to twenty-two years to life imprisonment.

Stewart took a direct appeal from his conviction in the first trial and the Tenth District affirmed. *State v. Stewart*, 2020-Ohio-1245 (Ohio App. 10th Dist. Mar. 31, 2020).  That court also affirmed the conviction and sentence from the second trial.  *State v. Stewart*, 2020-Ohio-5344 (Ohio App. 10th Dist. Nov. 19, 2020), appellate jurisdiction declined, 161 Ohio St.3d 1452 (2021).

Stewart, represented by counsel, filed his Petition in this Court March 1, 2022, pleading the following grounds for relief:

> **Ground One**: The trial court committed prejudicial error by allowing the admission of "other acts" evidence that was inadmissible and otherwise unfairly prejudicial, thereby depriving Appellant of a fair trial.
>
> **Ground Two**: The verdicts of guilt as to murder, and felony murder, and the attached firearm specifications are against the manifest weight of the evidence.

(Petition, ECF 1).  Respondent concedes that the Petition is timely under 28 U.S.C. § 2244.

# Analysis

**Ground One:  Admission of Improper Evidence of Prior Bad Acts**

In November 2014 shortly before the murder in suit, someone video recorded Stewart firing a handgun at a party; the video was then posted to Stewart's Facebook account where it could have been seen by any of Stewart's Facebook "friends."  The State obtained a copy of that recording and, over Stewart's objection, showed it to the jury along with several derived still photographs. There was no dispute of the authenticity of this evidence, but Stewart claimed it was propensity evidence, inadmissible under Ohio R. Evid. 404.  The trial judge overruled the objection, but instructed the jury they could not consider it was proof of Stewart's propensity to commit gun crimes.

On appeal, Stewart pleaded as his First Assignment of Error:  "The trial court committed prejudicial error by allowing the admission of "other acts" evidence that was inadmissible and otherwise unfairly prejudicial, thereby depriving appellant of a fair trial." *Stewart, supra*, at 4.

> Appellant claims the state utilized this evidence to prove that appellant had access to handguns, knew how to use them, and had a propensity to fire them. Accordingly, appellant maintains that the video and photographs constitute impermissible other acts evidence under Evid.R. 404(B) and impermissible prejudicial evidence under Evid.R. 403(A). Appellant claims the admission of this evidence prejudicially affected his substantial rights to a fair verdict.

*Id.*  The Tenth District accepted Stewart's argument that this evidence was not admissible under the Ohio Rules of Evidence.  *Id.* at ¶¶ 26-40.  However, it went on to hold that the admission was harmless error beyond a reasonable doubt.  ¶ 42.

Respondent argues this First Ground for Relief is not cognizable in habeas corpus, being

3

essentially a request for this Court to review the state evidentiary rulings of the Tenth District, whereas only federal constitutional claims can provide a basis for habeas relief (Return of Writ, ECF No. 6, PageID 343-55).

Stewart's Traverse responds to this argument as follows:

> In *Thomas v. Miniard,* No. 2:18-CV-13829-TGB, 2022 WL 1194056 (E.D. Mich. Apr. 21, 2022), the court recently noted the following:
>
>> The admission of evidence may violate the Due Process Clause (and thereby provide a basis for habeas relief) where the admission "is so extremely unfair that its admission violates 'fundamental conceptions of justice.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quoting *United States v. Lovasco,* 431 U.S. 783, 790 (1977)); *Bugh v. Mitchell,* 329 F.3d 496, 512 (2003). The Supreme Court "defined the category of infractions that violate fundamental fairness very narrowly." [*Estelle v. McGuire,* 502 U.S. 62, 73 (1991)]. To violate due process, an evidentiary decision must "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (citation omitted). This standard accords the state courts "wide latitude ... with regard to evidentiary matters under the Due Process Clause." *Id*.
>
> *Miniard*, 2022 WL 1194056, *5; see also *Garza v. Shinn,* No. CV-14-01901-PHX-SRB, 2021 WL 5850883, *15 (D. Az. Dec. 9, 2021) ("[T]he admission of evidence at a state court trial forms the basis for federal habeas relief only if the evidentiary ruling rendered a petitioner's trial unfair in violation of his due process rights."); *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986) (explaining that whether or not the admission of evidence is contrary to a state rule of evidence, a trial court's ruling does not violate due process unless the admitted evidence is "of such quality as necessarily prevents a fair trial"). The court in *Miniard* went on to fully considered [sic] whether it was "fundamentally unfair to admit" the other acts evidence. *Miniard*, 2022 WL 1194056, *5.
>
> Further, in *Kamara v. Warden*, No. 2:21-cv-2029, 2022 WL 1420299 (S.D. Ohio Apr. 29, 2022), the court noted how the petitioner presented an "other acts" issue "as both a federal constitutional claim (fair trial) and an Ohio Evidence Rule claim,"

and because "the fair trial claim was squarely presented," "the decision on that claim is entitled to deference unless it offends Supreme Court precedent." *Id*. at *5.

(Traverse, ECF No. 11, PageID 1052-53.)

The cited cases require detailed analysis.

**Kamara v. Warden**, No. 2:21-cv-2029, 2022 WL 1420299 (S.D. Ohio Apr. 29, 2022).

The cited opinion in *Kamara* is that of the undersigned and deals with the same prior bad acts issue presented here[1].  On direct appeal, Kamara presented this claim to the Ohio Third District Court of Appeals as follows: "Kamara's right to a fair trial was denied by the trial court's decision to allow the State to use other acts evidence that Kamara was a major drug trafficker for a six-month period, in violation of Evid.R. 403, 404, and the Due Process Clause."  In federal habeas his First Ground for Relief was "Appellant's right to a fair trial was violated by the trial court decision to allow the State to use other act bad evidence violating the Petitioner's 14th Amendment right to due process.  In other words in the state court he had raised both an Ohio Evid. R. 404 and 14th Amendment fair trial claim.  Although he had preserved the 14th Amendment claim, this Court was bound to defer to the Third District's rejection of that claim because "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003), noting that the Supreme Court refused to reach the issue in *Estelle v. McGuire*. 502 U.S. 62 (1991).  *Kamara* at *6.

*Kamara* is directly in point and supports denial of Stewart's First Ground for Relief.  While there may be state evidentiary rulings that are so unfair as to make the whole trial unfair, the Supreme Court has never held that admitting propensity evidence falls in that category.  *Bugh,*

---

[1] That opinion became final when it was adopted by Chief Judge Marbley on June 3, 2022.

*supra*.

**Thomas v. Miniard,** 2022 WL 1194056 (E.D. Mich. Apr. 21, 2022).

In habeas Thomas raised a claim of improper use of prior bad acts evidence.  Although the warden pleaded procedural default in defense, the court bypassed that issue and ruled against Thomas on the merits, finding the state court holding that the evidence was admissible under Rule 404 was non-reviewable and deferring to the State court's ruling that admission of the evidence was not fundamentally unfair.

**Garza v. Shinn,** 2021 WL 5850883 (D. Az. Dec. 9, 2021)

Garza raised a habeas claim of fundamental unfairness in admitting prior bad acts evidence. The court denied that claim, holding "there is no clearly established Supreme Court precedent holding that a state court violates due process by admitting other acts evidence. *See, e.g.*, *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003), and *Kipp v. Davis*, 971 F.3d 939, 952 n.8 (9th Cir. 2020)" *Id*. at *15.

Thus all the in-point precedent cited by Stewart supports dismissing Ground One for lack of cognizability.  Cited cases supporting a petitioner's position on the inadmissibility of prior bad acts all rely either on State or federal evidence rules and not on the Fourteenth Amendment. Ground One should be dismissed for failure to state a claim upon which habeas corpus relief can be granted.

**Ground Two:  Sufficiency of the Evidence**

In his Second Ground for Relief, Stewart asserts his conviction is not supported by constitutionally sufficient evidence.

6

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.* A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States*, 577 U.S. 237 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all

7

> sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

8

*Coleman v. Johnson*, 566 U.S. 650, 651 (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam). The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims. *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010). *Thompson v. Skipper*, 981 F.3d 476 (6th Cir.,2020). "To evaluate a sufficiency-of-the-evidence claim, we consider 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. (quoting *Jackson*, 443 U.S. at 324)."

To warrant habeas relief, the state court's application "must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *Nagy*, 962 F.3d at 199 (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)). In other words, "relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *Woodall*, 572 U.S. at 427 (quoting *Harrington v. Richter,* 562 U.S. 86, 103 (2011)).

Together, *Jackson* and AEDPA's two layers of deference dictate that "a federal court's 'review of a state-court conviction for sufficiency of the evidence is very limited.'" *Tackett v. Trierweiler,* 956 F.3d 358, 367 (6th Cir. 2020) (quoting *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018)).

9

**Procedural Default**

On its face, Ground Two claims Stewart's convictions are against the manifest weight of the evidence (Petition, ECF No. 1, PageID 20).  That was the claim he presented to the Tenth District Court of Appeals in his appeal from the results of the second trial.  *Stewart 2*, ¶ 21.  He "acknowledges that in the state courts, he challenged his convictions as being against the manifest weight of the evidence."  (Petition, ECF No. 1, PageID 20, citing *Stewart 2* at ¶ 47.)  However he argues that pleading a manifest weight claim in state court is an adequate presentation of a sufficiency of the evidence claim to satisfy the exhaustion of state court remedies requirement for presenting the sufficiency claim later in habeas (Petition, ECF No. 1, relying on *Nash v. Eberlin*, 258 F. App'x 761 (6th Cir. 2007).)

Respondent disagrees, asserting Stewart did not fairly present his sufficiency argument to the Tenth District.  Respondent first argues

> In the *Nash* case, the unreported[2] panel of the Sixth Circuit liberally construed a pro se habeas inmate's manifest-weight-of-the-evidence claim *as presented in the federal habeas case* as a constitutional sufficiency-of-the-evidence claim because under the facts of that case it found that the state appellate court had considered the constitutional claim when rejecting the state-law manifest weight claim presented in direct review. *Nash*, 258 F.App'x 761 at 764 fn. 4. The *Nash* panel did not hold that a counseled inmate's presentation of a manifest weight claim in direct review could constitute the fair presentation of a constitutional evidential sufficiency claim as a matter of precedential habeas corpus law.

(Return of Writ, ECF No. 6, PageID 335).

In *Nash* the Sixth Circuit held:

> As a threshold matter, we first determine that Nash did not procedurally default on his sufficiency of the evidence claim by not presenting it to the Ohio state courts.4 Under normal circumstances,

---

[2] The *Nash* opinion is not unreported, but rather unpublished.

> habeas relief can only be sought for claims that have been ruled upon in state court. See 28 U.S.C. § 2254(b)(1)(A). On appeal to the Fifth Circuit Court of Appeals of Ohio, Nash argued that his conviction for felonious assault was against the manifest weight of the evidence, but he did not literally argue that there was insufficient evidence to support his conviction. Nevertheless, the sufficiency of the evidence issue was adequately passed upon by the Ohio courts because the determination by the Ohio Court of Appeals that the conviction was supported by the manifest weight of the evidence necessarily implies a finding that there was sufficient evidence. The Ohio Court of Appeals, for instance, has explained that " '[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency.' Thus, a determination that a conviction is supported by the weight evidence will also be dispositive of the issue of sufficiency." *State v. Lee*, 158 Ohio App.3d 129, 814 N.E.2d 112, 115 (2004) (citations omitted). Therefore, the district court properly entertained Nash's sufficiency of the evidence claim because it has been effectively presented to the Ohio courts and was decided by the Ohio Court of Appeals.

*Nash v. Eberlin,* 258 F.App'x 764-65 (6th Cir. 2007). Respondent seeks to distinguish *Nash* on the grounds that Nash was *pro se* and Stewart has counsel. The opinion in *Nash* reflects that he was *pro se* in federal court but not whether he had counsel on direct appeal, counsel to which he was constitutionally entitled. In any event, the *Nash* panel made nothing of that distinction.

Respondent correctly describes the differences between the two claims. Manifest weight is only a state law claim and is of itself not cognizable in habeas. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986). In *State v. Thompkins,* 78 Ohio St. 3d 380 (1997)*,* the Supreme Court of Ohio reaffirmed the important distinction between appellate review for insufficiency of the evidence and review on the claim that the conviction is against the manifest weight of the evidence. It held:

> In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida*, 457 U.S. 31,

45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, (1982), *citing Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. *Robinson, supra*, 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.)

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs*, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

78 Ohio St. 3d at 387. In *State v. Martin*, 20 Ohio App. 3d 172 (Hamilton Cty. 1983)(cited approvingly by the Supreme Court in *Thompkins*), Judge Robert Black contrasted the manifest weight of the evidence claim:

In considering the claim that the conviction was against the manifest weight of the evidence, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. …

*Martin,* 20 Ohio App. 3d 172, ¶3 of the syllabus. The consequences of the distinction are important

12

for a criminal defendant.  Reversal on a manifest weight claim requires unanimity in the court of appeal panel.  Ohio Constitution, Article IV, Section 3(B)(3). The State may retry a case reversed on the manifest weight of the evidence;  retrial of a conviction reversed for insufficiency of the evidence is barred by the Double Jeopardy Clause.  *Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

Respondent is also correct that a manifest weight claim would not alert a state court to the federal claim:  sufficiency of the evidence claims arise under the Due Process Clause of the Fourteenth Amendment whereas authority to reverse on a manifest weight claim appears to be granted or recognized directly by the Ohio Constitution rather than through application of the Due Course of Law clause of the Ohio Constitution.

Nevertheless, this Court has followed *Nash* on the issue of fair presentation.

> While *Nash [v. Eberlin,* 258 Fed. Appx. 761, 2007 U.S. App. LEXIS 29645 (6th Cir. Dec. 14, 2007)] is not a published opinion of the Sixth Circuit and therefore not binding precedent, the Magistrate Judge will follow it and (1) not find any procedural default from Hughes' limitation of his state court argument to manifest weight, (2) liberally construe the Petition as making a claim of insufficiency of the evidence and (3) read the state court of appeals' decision that the conviction was not against the manifest weight of the evidence as "necessarily impl[ying] a finding that [Hughes'] conviction was also supported by sufficient evidence."  *Id.*  at 762.  See also *State v. Lee*, 158 Ohio App. 3d 129, 2004 Ohio 3946, 814 N.E.2d 112, 115 (Ohio App. 9th Dist. 2004), cited in *Nash* at 765.

*Hughes v. Warden*, 2011 U.S. Dist. LEXIS 54131(S.D. Ohio Apr. 27, 2011), adopted, 2011 U.S. Dist. LEXIS 54132 (S.D. Ohio May 20, 2011).

**Merits**

Although Stewart's Second Ground for Relief is not procedurally defaulted, this Court must review the Tenth District's decision on its merits deferentially, i.e. under the standard adopted

by the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA").

The evidence presented by the state established the following.

{¶ 5} Roberta Turner, a long-time friend of appellant, often socialized with him at a club Damon Fluellen ran out of his house located at 833 St. Clair Avenue. The club was open all day and night and there were always "lots of people coming and going." (Tr. at 414.) Appellant lived in the neighborhood and, according to Turner, regarded Fluellen as a mentor.

{¶ 6} Late in the evening on January 19, 2015, Turner was with appellant at a bar located within a 3 to 4 minute walk from Fluellen's house. Turner left the bar around 11:45 p.m.; appellant remained there. At approximately 12:20 a.m. on January 20, 2015, Turner exchanged several text messages and phone calls with Fluellen, which prompted her to text appellant asking if he was "alright." (Tr. at 403.)

{¶ 7} Meanwhile, at approximately 12:12 a.m., Verlie Smith, a COTA bus driver, approached the intersection of 2nd and St. Clair Avenues and heard four gunshots. He observed an African-American man walking away from a truck parked on St. Clair in the area where the gunshots were fired. The man then walked toward two nearby houses. Smith could not see if the man entered one of the houses or walked between them. Almost simultaneously, a car parked in front of the truck drove away. The man Smith had seen walking was not in the car. For safety reasons, Smith sat through three cycles of red lights. He eventually turned onto St. Clair and passed by the truck. Through the open driver's door, he observed a man slumped over in the driver's seat.

{¶ 8} Columbus Police Officer Jason Kulp and other officers were dispatched to the scene of the shooting. Kulp described the neighborhood as a "high-crime area" known for drug activity and shootings. (Tr. at 264.) Upon arrival, Kulp observed the victim seated in a truck parked directly across the street from 833 St. Clair. He then observed a man, later identified as Fluellen, standing on the front porch of 833 St. Clair clad only in his underwear. At Kulp's direction, Fluellen re-entered the house. A short time later, Fluellen came back outside, this timely fully clothed. Because Fluellen's behavior seemed suspicious, officers sought and received

14

permission to search his house. The search revealed no evidence linked to the shooting.

{¶ 9} The police interviewed Smith, who described the man he saw walking away from the truck as approximately 6 feet tall, weighing between 180 and 200 pounds, wearing a dark jacket and pants and a knit, toboggan-type hat. He did not see a bill on the hat because the man was walking away and had his back to Smith.

{¶ 10} At trial, Kulp identified surveillance video obtained from the Milo-Grogan Recreation Center, which is located across the street from the scene of the shooting.[1] The video depicts a car with its headlights on approach and park on the street across from 833 St. Clair. Approximately three minutes later, a truck arrives and parks behind the car. The video then depicts flashes of gunfire near the driver's side of the truck, followed by the shadow of a person walking between the car and the truck. The car then drives away. Very shortly thereafter, a light at the back of 833 St. Clair illuminates, and the back door opens momentarily. The video then depicts a person moving around in the backyard.

{¶ 11} Thomas Martin lives on Starr Avenue behind 833 St. Clair. In the early morning hours of January 20, 2015, he observed a police helicopter with its lights illuminated hovering over his house. Ten to fifteen minutes later, he heard the chain-link fence in his backyard rattle; he assumed that someone had jumped over the fence. Later that morning he found a red Chicago Bulls baseball hat on the ground along the fence line. Thinking the person who lost it would likely return for it, he left it there. He retrieved the hat the next day and turned it over to the police.

{¶ 12} Detective Suzanne Nissley of the Crime Scene Search Unit identified several photographs taken at the crime scene which depict, among other things, Williams' body inside the truck.[2] The photographs also depict evidence recovered from the scene, including four .40 caliber spent shell casings found in the street and on the sidewalk near Williams' vehicle, as well as a .40 caliber Smith & Wesson semi-automatic handgun (with 1 live round in the chamber and a magazine containing 8 live rounds) found in the brush beside a fence by the alley at the rear of 833 St. Clair.

{¶ 13} Matthew White, a firearms examiner with the Bureau of Criminal Investigation ("BCI"), examined and test-fired the recovered weapon, found it to be operable, and determined that the four spent casings and three bullets recovered from the scene (two

of which were recovered from Williams' body) had been fired from that weapon.

{¶ 14} Timothy Augsback, a BCI forensic scientist, analyzed DNA swabs taken from the firearm, including the trigger, the handled areas (the grip and the slide), the magazine, and the nine live rounds. That analysis revealed that the trigger, the magazine, and the handled areas contained a mixture of DNA, with appellant included as the only major contributor. DNA deposited by the minor contributors was insufficient to test. No DNA profile was obtained from the nine rounds. Augsback also analyzed DNA swabs taken from the baseball hat, which revealed a mixture of DNA, with appellant included as the only major contributor. He acknowledged that it is not possible to determine how or when DNA is deposited on an item; accordingly, he could not definitively state that appellant fired the weapon on January 20, 2015.

*3 {¶ 15} Detective James Howe conducted a digital forensic examination and cell-site analysis of appellant's cell phone for the relevant time period. Within minutes of the shooting, appellant both received and sent calls and text messages from the general vicinity where the shooting occurred. Appellant's browser history revealed that after the shooting, he searched a local news website numerous times for information pertaining to the shooting.

{¶ 16} Appellant presented the following evidence. Katie Hodge, a friend of appellant, communicated via cell phone with him several times on January 19 and 20, 2015. According to Hodge, appellant gave no indication during these communications that he was involved in Williams' shooting.[3]

{¶ 17} Jakita Smith-Goolsby, the mother of appellant's children, averred that appellant grew up in the Milo-Grogan area and lived there with his mother on January 20, 2015. He had many friends in the area with whom he often shared clothing items, including his vast collection of hats. She spoke with appellant by cell phone minutes before and after the shooting. She found nothing odd about their conversations; indeed, appellant was breathing normally and otherwise gave her no reason to believe that anything unusual had happened. She was shocked to later learn that appellant had been charged with Williams' murder.

{¶ 18} In addition to the testimony and exhibits presented, the parties entered into numerous stipulations. (State's Ex. GG.) Many of the stipulations confirmed the accuracy of evidence submitted by the state, including the events depicted on various surveillance

16

videos (State's Ex. K, J, and L), records from appellant's cell phone (State's Ex. Q, Q1, Q2a and Q3a), records from Turner's cell phone (State's Ex. CC), records from Williams' cell phone (State's Ex. P1), aerial photographs of the crime scene (State's Ex. I), autopsy photographs and findings of Franklin County Deputy Coroner Dr. Kenneth Gerston (State's Ex. B11, B14, B17, B20, B29, and U), a photograph of Williams (State's Ex. V), still images of appellant taken from the cell phone video recorded on November 9, 2014 (State's Ex. Y, Y1, Y2, and Y3), photographs of appellant (Def. Ex. 1A through 1RR), and photographs depicting the location and condition of the firearm when recovered from the alley and fence line behind 833 St. Clair shortly after the homicide (State's Ex. A38, A39, A40, and A41.) The stipulations also included chain-of-evidence information related to the baseball hat (State's Ex. S1), DNA standards and submissions from Williams and appellant, and information regarding recovery and submission of the firearm and ammunition (State's Ex. M and N3b).

*Stewart, supra.*

The Tenth District evaluated this evidence as follows:

{¶ 47} In his second assignment of error, appellant contends his convictions for purposeful murder, felony murder, and the attached firearm specifications are against the manifest weight of the evidence. Appellant does not challenge the legal sufficiency of the evidence.[3]

{¶ 48} When presented with a manifest weight challenge, an appellate court engages in a limited weighing of the evidence to determine whether competent, credible evidence supports the jury's verdict. *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 32, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.'" *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). However, "in conducting our review, we are guided by the presumption that the jury, or the trial court in a bench trial, 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *State v.*

---

[3] That is, Stewart did not present a sufficiency of the evidence claim in those terms. In this Court's experience Ohio appellants often combine manifest weight and sufficiency claims in one assignment of error and consequent argument on direct appeal.

*Cattledge,* 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6, quoting *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984). Accordingly, this court affords great deference to the jury's determination of witness credibility. *State v. Redman*, 10th Dist. No. 10AP-654, 2011-Ohio-1894, ¶ 26, citing *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 55.

{¶ 49} An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Reversal on manifest weight grounds is appropriate " 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 50} Essentially, appellant contends that his convictions are against the manifest weight of the evidence because the evidence supporting the jury's verdicts was circumstantial. We agree that the state's case against appellant was purely circumstantial. No eyewitness testimony positively identified appellant as the shooter. No evidence established that appellant knew Williams or had any connection to him, let alone had a reason to murder him. No evidence established that appellant was upset, angry, or acting strangely prior to or after the murder. However, " '[a] conviction can be sustained based on circumstantial evidence alone.' " *State v. Ford*, 10th Dist. No. 16AP-282, 2016-Ohio-8350, ¶ 13, quoting *State v. Franklin*, 62 Ohio St.3d 118, 124 (1991), citing *State v. Nicely*, 39 Ohio St.3d 147, 154-55 (1988). Indeed, "[c]ircumstantial evidence possesses the same probative value as direct evidence." *Id.*, citing *State v. Sowell*, 10th Dist. No. 06AP-443, 2008-Ohio-3285, ¶ 89. "In fact, circumstantial evidence may be more certain, satisfying and persuasive than direct evidence." *Id.*, citing *State v. McBride*, 10th Dist. No. 10AP-585, 2011-Ohio-1490, ¶ 26, citing *State v. Ballew*, 76 Ohio St.3d 244, 249 (1996).

{¶ 51} A thorough review of the record reveals that the state presented ample competent, credible circumstantial evidence proving appellant's guilt. Appellant's DNA was on the murder weapon, and he was the only major contributor of that DNA. Appellant challenges the reliability of this DNA evidence, noting Augsback's testimony that the weapon had a mixture of other

18

persons' DNA, and his admission that it was not possible to determine how or when appellant's DNA was deposited on the weapon. However, it was within the province of the jury to view Augsback as he testified, assess his credibility, and accept or discount his testimony, or portions thereof, as it deemed appropriate. *State v. Wren*, 10th Dist. No. 08AP-320, 2008-Ohio-6512, ¶ 10, citing *State v. Burke,* 10th Dist. No. 02AP-1238, 2003-Ohio-2889. A jury is "free to believe 'all, part, or none of a witness's testimony.' " *State v. Ellis*, 10th Dist. No. 16AP-279, 2017-Ohio-1458, ¶ 33, quoting *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21.

{¶ 52} Appellant's DNA was also found on the baseball hat found near the crime scene, and he was the only major contributor of that DNA. Appellant challenges the reliability of this evidence, noting Smith's testimony that the shooter was wearing a knit hat; however, Smith explained that he could not see a bill on the hat because the shooter was facing away from him. It was within the province of the jury to accept all, part, or none of Smith's testimony, including his explanation regarding the type of hat the shooter wore. Appellant also cites Smith-Goolsby's testimony that other people wore appellant's hats. Again, it was within the jury's purview to assess the credibility of each witness appearing before it, including the witnesses who testified on behalf of appellant. The jury simply could have disbelieved Smith-Goolsby's testimony, as she is the mother of appellant's children and thus may have had self-serving reasons to cast doubt on his guilt. "A conviction is not against the manifest weight of the evidence because the trier of fact chose to believe the state's version of the events over the defendant's version." *Id.*, citing *State v. Gale*, 10th Dist. No. 05AP-708, 2006-Ohio-1523, ¶ 19.

{¶ 53} The evidence also established that the shooting occurred in front of a house owned by appellant's mentor, Fluellen, and that the shooter walked toward that house immediately after the shooting. Appellant claims that this evidence did not necessarily establish a connection to Fluellen. Appellant's argument suggests that the location of the shooting and the shooter's subsequent travels were merely coincidental. However, appellant's argument fails to take into account the fact that the murder weapon bearing his DNA was recovered near the rear of Fluellen's house.

{¶ 54} Finally, evidence of appellant's cell phone usage established that he was in the area at the time of the shooting, and that after the shooting, he searched a news website numerous times for information about the shooting. Appellant asserts that he checked

the news sites only because the homicide occurred in his neighborhood, directly in front of his close friend's house, and he simply was interested in learning what had happened.

{¶ 55} All of appellant's challenges to the circumstantial nature of the evidence were matters that were presented to the jury, which was in the best position to evaluate the evidence presented at trial, including assessing the credibility of the witnesses. After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we conclude that the jury did not clearly lose its way or create such a manifest injustice that appellant's convictions for purposeful and felony murder and related firearm specifications must be reversed and a new trial ordered.

{¶ 56} Appellant's second assignment of error is overruled.

*Stewart, supra.*

To prevail on his Second Ground for Relief, Stewart must show that this decision is contrary to or an unreasonable application of clearly established Supreme Court precedent, in this case *Jackson, supra. Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Harrington v. Richter*, 562 U.S. 86 at 103 (2011).

The case was prosecuted and defended on the basis of circumstantial evidence alone. For example, the State showed Stewart was at a bar near the scene of the crime about a half hour before it happened. Stewart countered that it was the neighborhood where he lived and had grown up. The shooter walked toward Damian Fluellen's house after the shooting. Stewart counters that because the shooting happened in front of Fluellen's house, "a shooter leaving the scene by way of Fluellen's house would not necessarily have to have a connection to Fluellen." (Petition, ECF No. 1, PageID 21). On the other hand, it was testified and is apparently uncontradicted that Stewart did have a connection with Fluellen whom he considered a "mentor."

The murder weapon was recovered shortly after the crime in the vicinity of Fluellen's house. The police identified Stewart as the major contributor to the DNA on the weapon, although

the DNA expert could not identify at what time Stewart's DNA was deposited, although it must have been shortly after the murder because the weapon promptly came into police custody.

The police also recovered a baseball cap at the scene of the crime shortly after it occurred and Stewart was the major (but not only) contributor to DNA on the cap. An eyewitness testified the shooter was wearing a knit cap, but did not identify the shooter. Jakita Smith-Goolsby, identified as the mother of appellant's children, testified he had a large collection of hats that he shared with others, but neither she nor anyone else denied Stewart had a baseball cap of the design the police recovered at the scene nor attempted to show he had shared this particular cap with anyone else.

Stewart offered no alibi, no proof that at the time of the crime he was somewhere else. Nor did he offer any refutation of the forensic evidence that the recovered handgun was the murder weapon or explanation of how he became the major and last contributor to the DNA found on the murder weapon.

As the Tenth District found, the jury heard all of Stewart's explanations of the circumstantial evidence which it was free to accept or reject. In particular, it might have found Jakita Smith-Goolsby's testimony biased by her intimate relationship with Stewart. Stewart has not shown that any of the circumstantial evidence against him is unworthy of belief and cumulatively it supports the inference that Stewart was the shooter. The jury could reasonably have accepted that inference beyond a reasonable doubt because there is no doubt, based on the evidence, that Williams was intentionally killed in a location where Stewart had recently been and someone left behind a baseball cap and the murder weapon that Stewart had handled.

In sufficiency of the evidence cases, habeas courts "do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury." *Brown, supra.*

21

The Tenth District's conclusion on the weight of the evidence necessarily implies there was sufficient evidence to convict and that conclusion is not an unreasonable application of *Jackson*. The Second Ground for Relief should therefore be denied.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.

June 13, 2022.

s/ *Michael R. Merz*
United States Magistrate Judge

22